IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alex Sualim,<br><br>    Movant/Defendant,<br><br>v.<br><br>United States of America,<br><br>    Respondent. | No. CV-16-01018-PHX-SRB (JZB)<br>(No. CR-13-01515-PHX-SRB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, SENIOR UNITED STATES DISTRICT JUDGE:

Movant Alex Sualim has filed a Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255, seeking to vacate or set aside a sentence imposed by the Court. (Doc. 1.)[1]

**I. SUMMARY OF CONCLUSION**

Movant argues that his plea of guilty was coerced by his attorneys' threats, the Court departed from the requirements of Rule 11, and the government withheld material evidence in his case. The record reflects there is no credible evidence of coercion, Movant avowed he was voluntarily pleading guilty during a plea colloquy that fully complied with Rule 11, and there is no evidence the government withheld evidence. Therefore, the Court recommends Movant's request for relief be denied.

---

[1] Citations to "Doc." are to the docket in CV-16-01018-PHX. Citations to "CR Doc." are to the docket in the underlying criminal case, CR-13-01515-PHX.

## II. PROCEDURAL HISTORY

On October 30, 2013, Movant/Defendant was indicted on 21 counts related to Mail Fraud and Wire Fraud. (CR Doc. 7.)

On February 20, 2015, Movant pleaded guilty to "Count 1 of the indictment charging the defendant with a violation of 18 United States Code (U.S.C.) § 1349, Conspiracy to Commit Wire/Mail Fraud, a Class C felony offense." (CR Docs. 131, 156 at 1.)

On September 14, 2015, Movant was sentenced to 150 months imprisonment and three years of supervised release on Count 1. (CR Doc. 154 at 1.)[2] The Court ordered restitution in a total amount of $13,100,833. (*Id.*)

## III. MOTION TO VACATE OR SET ASIDE SENTENCE

### a. Movant's Claims

On April 11, 2016, Movant filed his Motion arguing the following Grounds, as summarized by the Court:

> In Ground One, Movant alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment when his counsel "coerced and intimidated [him] into signing and agreeing to plead guilty." In Ground Two, Movant alleges that his due process rights were violated because he was coerced into pleading guilty, he was not informed of the essential elements of the crime with which he was charged, he was not informed of his right to appeal or collaterally attack his sentence, and the government committed "constructive fraud" on the Court. In Ground Three, Movant alleges that the United States Attorney violated his Fifth and Fourteenth Amendment rights "by withholding material evidence that would have exonerated the petitioner."

(Doc. 4 at 2.)

On June 9, 2016, the government filed a Response. (Doc. 7.) On August 1, 2016, Movant filed a Reply. (Doc. 11.) On September 13, 2016, the government filed a Supplement to its Response. (Doc. 12.)

---

[2] The Court determined the advisory guideline range was between 135 and 168 months imprisonment. (CR Doc. 166 at 11.) The plea agreement stipulated that the sentenced would not exceed 150 months imprisonment. (*Id.*)

### b. Ground One

Movant alleges his counsel was ineffective by coercing and intimidating him to (1) plead guilty and (2) sign an agreement that waived his right to collaterally attack his sentence, which was a conflict of interest. (Doc. 1 at 5.) Movant first argues counsel "coerced and intimidated" him into pleading guilty. (*Id.*) In his Reply, he argues that his counsel "chose not to admit" favorable records obtained from Nigeria. (Doc. 11 at 2.)[3] In his Reply and affidavit, he avows counsel threatened that an "all white" jury would convict him "out of ignorance and possible prejudice." (Doc. 11 at 4, 22.) He asserts he was presented with the threat of a 25-year sentence if he did not plead guilty. (*Id.*) He also argues that counsel "coached" him prior to his plea colloquy and told him he had "no choice but to tell the government that I knew something." (*Id.* at 22, 24.)

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Movant must show: (1) deficient performance—counsel's representation fell below the objective standard for reasonableness; and (2) prejudice—there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. The *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quotation and citation omitted). "To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's 'subjective state of mind' and the 'constitutional acceptability of the external forces inducing the guilty plea.'" *Doe v. Woodford*, 508 F.3d 563, 570–72 (9th Cir. 2007) (citation omitted). Because "it is difficult to probe the highly

---

[3] He also argues that counsel's (Mr. Donau's) intentionally unsworn letter is evidence of the fraud counsel is perpetrating upon the Court. (Doc. 11 at 2-3.) But Respondent subsequently submitted an affidavit from counsel declaring under penalty of perjury that the statements in the affidavit are true. (Doc. 12-1 at 2.)

- 3 -

subjective state of mind of a criminal defendant, the best evidence of his understanding when pleading guilty is found in the record of the Rule 11 colloquy." *United States v. Jimenez–Dominguez*, 296 F.3d 863, 869 (9th Cir. 2002).

Movant stated the following during the plea proceeding:

> THE COURT: Were any threats made or was any force used to get you to sign a plea agreement?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Do you understand that you do not have to sign a plea agreement and plead guilty if you do not want to?
>
> THE DEFENDANT: Yes, Your Honor. I understand.
>
> THE COURT: Are you signing this plea agreement voluntarily and of your own will with the advice of your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.
>
> . . . .
>
> THE COURT: The charge is conspiracy to commit wire and/or mail fraud, a Class C felony, in violation of Title 18, United States Code Section 1349.
>
> Mr. Sualim, do you plead guilty or not guilty?
>
> THE DEFENDANT: Yes, Your Honor. Guilty, Your Honor.
>
> THE COURT: Are you pleading guilty because you are, in fact, guilty of this crime?
>
> THE DEFENDANT: Yes, Your Honor.

(CR Doc. 171 at 10, 29-30.)

Here, Movant fails to demonstrate that his plea was coerced. Movant expressed no reservations regarding his guilty plea colloquy. Instead, Movant agreed that he was voluntarily pleading guilty because he was in fact guilty. (*Id*. at 29.) Movant's statements are afforded significant weight. *See United States v. Kaczynski*, 239 F.3d 1108, 1115 (9th Cir. 2001) (giving "substantial weight" to a defendant's in-court statements in determining whether a guilty plea was voluntary); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry

a strong presumption of veracity in subsequent proceedings attacking the plea."). During his sentencing hearing, Movant stated that he reviewed the presentence report with his attorney and "did my best possible to help the government" regarding cooperation. (CR Doc. 166 at 3, 7.) The Court stated that Movant's counsel filed a sentencing memorandum recommending a sentence as low as 120 months of imprisonment. (*Id.* at 7.) Movant spoke at sentencing but did not express an objection to this below-guideline recommendation. (*Id.*) *See United States v. Lunsford*, 787 F.2d 465, 466 (9th Cir. 1986) (finding without a hearing that defendant's "guilty plea was entered voluntarily and knowingly" where defendant did not object during plea colloquy or sentencing). Finally, Movant told the Court at his change of plea proceeding and sentencing that he was satisfied with the work of his attorneys. During his plea hearing, Movant answered:

> THE COURT: Are you satisfied with the representation you have received from your lawyers in this case?
>
> THE DEFENDANT: Yes, Your Honor.

(CR Doc. 171 at 6.) During his sentencing proceeding, Movant answered:

> THE COURT: Have you been satisfied with the representation your lawyers have provided?
>
> ALEX SUALIM: Yes, Your Honor.

(CR Doc. 166 at 4.)

Respondent submits two affidavits from Movant's counsel, Mr. Donau. In the first affidavit, Mr. Donau avows that Movant's allegation regarding coercion and intimidation "is completely without merit." (Doc. 7-1, Ex, M, at 35.) Counsel states that Movant was "agreeable" regarding the guilty plea, and that both counsel "scheduled multiple free-talks" to facilitate a lower sentence in the case. (*Id.*) In the second affidavit, Mr. Donau states that he and co-counsel were prepared to travel to Nigeria to prepare the case for trial, but Movant decided to plead guilty before the trip began. (Doc. 12-2 at 2.)

Importantly, the record reflects Movant's cooperation efforts prior to sentencing. Prior to his guilty plea, Movant participated in a "free talk" with the government on

- 5 -

December 16, 2014. (Doc. 7-1, Ex. G, at 16-19.)[4] After Movant pleaded guilty, he participated in two additional "free talks" with the government, on March 16, 2015 (Doc. 7-1, Ex. K, at 28-31) and August 24, 2015.[5] Movant's willingness to repeatedly meet with the government is consistent with his voluntary plea and hope for a reduced sentence. Conversely, his current avowals more accurately reflect his disappointment in receiving the maximum permissible sentence under the plea agreement. The Court has also considered that Movant pleaded guilty on February 20, 2015, and was sentenced on September 14, 2015. During a period of almost seven months, Movant never advised the Court that his plea was involuntary. Further, the Honorable Susan R. Bolton previously discredited Movant's sworn testimony during a suppression hearing. The Court found that Movant's sworn account of his arrest and questioning was "contradictory and unbelievable." (CR Doc. 100 at 4.)

Movant fails to demonstrate that counsel coerced him into pleading guilty pursuant to a plea agreement, and thus fails to prove counsel provided ineffective assistance. Movant signed a plea agreement, avowed his guilt under oath, willingly participated in multiple "free talks," repeatedly told the Court he was satisfied with counsel, and through counsel argued for a reduced sentence. Movant now asserts that counsel coerced his guilty plea. The Court previously discredited Movant's sworn testimony in a prior hearing, and the Court does not find his affidavit credible when compared to the record. *See United States v. Castello*, 724 F.2d 813, 815 (9th Cir. 1984) (finding the "court was entitled to credit Castello's testimony at the Rule 11 hearing over her subsequent affidavit."). The Court finds that Movant fails to demonstrate counsels' performance was deficient.

Movant's claim of a conflict of interest regarding the collateral-attack waiver is meritless. The government correctly notes that "the plea agreement did not require

---

[4] The guilty plea proceeding was conducted on February 20, 2015. (CR Doc. 131.)

[5] Respondent avows that the interview was terminated when Movant was "dishonest and again sought to minimize his guilt." (Doc. 7 at 9.)

Sualim to make such a waiver." (Doc. 7 at 14.)

### c. Ground Two

Movant asserts that his guilty plea "departed from the mandated requirements of Rule 11." (Doc. 1 at 6.)

As an initial matter, the Court does not find that "Sualim has waived the right to advance most, if not all, of the 'due process' theories promulgated in the second section of his petition." (Doc. 7 at 15.) Although Ground Two is labeled a "due process" argument, the subclaims are challenges based upon coercion, ineffective assistance, fraud, and Rule 11 violations.[6] These are challenges to the knowing and voluntary nature of his plea. The plea agreement contains an appeal waiver, but the waiver does not prevent Movant from contesting the voluntariness of his guilty plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.").

In Subclaim One, he argues his plea was coerced "by threat of an unreasonable prison sentence." (Doc. 1 at 6.) For the reasons outlined in Ground One, the Court finds the plea was not coerced. Also, a plea colloquy that satisfies "Rule 11's requirements will lead to a plea being considered knowing and voluntary, unless some misrepresentation or gross mischaracterization by counsel has tainted the plea." *United States v. Jeronimo*, 398 F.3d 1149, 1157 n.5 (9th Cir. 2005), overruled on other grounds. Movant's statements during the plea colloquy belie his claim that he was coerced by his attorney. While under oath, Movant avowed he understood:  (1) the importance of the oath (CR Doc. 171 at 4-5); (2) the right to maintain a plea of not guilty (*id*. at 7); (3) the right to a jury trial (*id*.); (4) the right to counsel (*id*.); (5) the right to confrontation (*id*.), to remain silent (*id*. at 8), to testify and present evidence (*id*. at 7-8), and to compel the attendance of witnesses (*id*. at 7); (6) he was waiving his trial rights (*id*. at 7-8); (7) the nature of the charge (*id*. at

---

[6] *See United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000) ("Pro se complaints and motions from prisoners are to be liberally construed.").

- 7 -

25); (8) the maximum penalties (*id*. at 11,18); (9) his restitution obligation and stipulation (*id*. at 12); (10) the $100 special assessment (*id*. at 12); (11) the Sentencing Guidelines (*id.* at 13-15); and, (12) potential adverse immigration consequences (*id.* at 24-25).[7] The plea colloquy complied with every requirement of Rule 11, and there is no credible evidence of misrepresentation or gross mischaracterization. Movant's argument fails.

In Subclaim Two, Movant argues he was "deprived of his right to be informed of all essential elements of the charged offense." (Doc. 1 at 6.) The plea agreement listed the elements of the offense. (CR Doc. 156 at 10.) The Court advised Movant of the elements of the offense during the plea colloquy. (CR Doc. 171 at 25-26.) Movant's argument is meritless.

In Subclaim Three, Movant argues he was "deprived of his right to be informed of his right to appeal and/or collaterally attack his conviction." (Doc. 1 at 6.) Movant was informed of those rights during the plea colloquy, and "agreed to give up [his] right to appeal to any higher court or to later try to come back into this Court to attempt to collaterally attack the validity of the conviction that results from your pleading guilty." (CR Doc. 171 at 8.) Also, the claim is meritless because the Court is reviewing his arguments.

In Subclaim Four, Movant again argues counsel had a conflict of interest from a waiver that "protected defense counsel for an ineffective assistance" claim. (Doc. 1 at 6.) Again, as Respondent states, "the plea agreement did not require Sualim to make such a waiver." (Doc. 7 at 14.) Movant's arguments in Subclaim Five and Six, that silence regarding this conflict resulted in fraud, are meritless.

In Subclaim Seven, Movant argues the plea is void or voidable. The claim is waived. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

In Subclaim Eight, Movant argues he "failed to admit in particularity any single element of the alleged offense." (Doc. 1 at 7.) But Movant answered specific questions

---

[7] *See* Fed. R. Crim. P. 11(b)(1).

- 8 -

from the Court and he agreed "that all of the facts set out in Section 10, called the factual basis, are true and accurate." (CR Doc. 171 at 29.)

During his plea colloquy, Movant stated the following:

> THE COURT: At this time, I will ask you what you did that resulted in your being charged with this crime. I will ask you a series of questions based on the factual basis set out on Pages 10 and 11 and 12 of the plea agreement. Mr. Sualim, between June of 2009 and October 2013, did you help operate an investment and advance-fee scheme that caused victims to suffer an aggregate loss of over $13 million?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And did you agree with others to use both the mail and the wires, the internet and the telephone, to operate this investment and advance-fee scheme?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And this scheme, this agreement to commit these crimes, were victims contacted by e-mail?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And were the victims told that the individuals with whom they were communicating were representatives of a Canadian company and offer the individuals to serve as U.S. distributors of a product that was typically a product known as silicon germanium?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And as part of the agreement, did you and other co-conspirators ask these individuals for money to pay for the inventory that they would ultimately receive to distribute this product in the U.S.?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And, in fact, there was no such product of silicon germanium that was ever shipped to these individuals. Is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And as part of your involvement in the conspiracy, you knew that these individuals, after being contacted by the -- over the wires and through the mail, were being defrauded of the money that they sent purportedly for inventory. Is that right?
>
> THE DEFENDANT: Yes, Your Honor.

|    |    |
|----|----|
| 1  | THE COURT: And you knew that they were never going to be provided with the products that were promised for which they were supposed to be the U.S. distributors. Is that also correct? |
| 2  | |
| 3  | THE DEFENDANT: Yes, Your Honor. |
| 4  | |
| 5  | THE COURT: And did you also assist in laundering the money that they provided as part of your involvement in the scheme, that is, having this money that they sent purportedly for product passing through various bank accounts until it was eventually provided to you and other co-conspirators? |
| 6  | |
| 7  | |
| 8  | THE DEFENDANT: Yes, Your Honor. |
| 9  | (Discussion off the record between the defendant and his counsel.) |
| 10 | THE COURT: Did your involvement in the scheme also involve purchasing the toll-free numbers for the fake Canadian and Chinese companies that the individuals were told they will be dealing with as distributors? |
| 11 | |
| 12 | |
| 13 | THE DEFENDANT: Yes, Your Honor. |
| 14 | THE COURT: Did your involvement in the scheme also involve purchasing a large number of e-mail addresses that were used to contact the perspective victims? |
| 15 | |
| 16 | THE DEFENDANT: Yes, Your Honor. |
| 17 | THE COURT: Did you help fabricate fake passports and identification documents for the individuals who posed as the Canadian representatives of the Chinese company? |
| 18 | |
| 19 | THE DEFENDANT: Yes, Your Honor. |
| 20 | THE COURT: Did you help arrange the shipping of crates of that didn't contain silicon germanium but that the individuals were told contained that product? |
| 21 | |
| 22 | THE DEFENDANT: Yes, Your Honor. |
| 23 | THE COURT: Did you work on the web design? |
| 24 | THE DEFENDANT: Yes, Your Honor. |
| 25 | THE COURT: Did you use spoof cards, e-mail accounts under fictitious names and VPN masking technology to fool the victims into thinking they were, in fact, dealing with both Canadian and Chinese representatives of this purported company? |
| 26 | |
| 27 | |
| 28 | THE DEFENDANT: Yes, Your Honor. |
|    | THE COURT: And did you also work with your co- |

    conspirators on the scripts that they used when they talked to these fraud victims?

    THE DEFENDANT: Yes, Your Honor.

    THE COURT: *And do you admit that all of the facts set out in Section 10, called the factual basis, are true and accurate*?

    THE DEFENDANT: Yes, Your Honor.

(CR Doc. 171 at 26-29) (emphasis added).

   In the factual basis in his written Plea Agreement, Movant admitted the following:

    Between June 2009 and October 2013, I helped operate an investment and advance-fee scheme that caused victims to suffer an aggregate loss of over $13 million. In general, the scheme would work as follows. First, potential victims would be contacted through an unsolicited email. In this email, and during other communications, the sender (using a fake name) would identify himself or herself as a representative of a Canadian company and would offer the victim an opportunity to serve as the U.S. distributor of a product-typically "silicon germanium," a semiconductor used in computer chips-that the Canadian company wished to purchase from a Chinese supplier. Potential victims wouldn't be asked for money during these early communications-instead, they'd be offered an opportunity to serve as a distributor without any upfront investment. Recipients who expressed interest also would be sent electronic copies of seemingly-legitimate identification documents and passports in the name of the fake Canadian representatives. More than five such fake passports were sent to victims during the course of the scheme. Over time, the story would change-victims would eventually be told that, due to unforeseen financing problems, they would need to supply a portion of the upfront purchase price. Victims who agreed would be sent wiring instructions that explained how they could remit their portion of the purchase price to the Chinese supplier. These wiring instructions typically called for victims to wire the money to a foreign bank account (often in Cyprus, Greece, China, or Hong Kong). After victims made an initial transfer into the foreign bank account, they'd be told that, due to some unforeseen change in circumstances (e.g., a change in the Chinese supplier's minimum purchase requirement), they actually needed to wire more money before the transaction could be completed. Over time, many victims became suspicious after expending large sums of money without receiving any corresponding shipments. In some instances, these victims would be sent crates and packages. In fact, these packages were simply filled with packing materials and other worthless items. Nevertheless, victims were cautioned not to open the packages because the "silicon germanium" that was supposedly inside was very sensitive and could only be opened in a sterile laboratory environment. As a result, several victims continued participating in the scheme (and wiring money overseas) after

> receiving the packages. I was responsible for several aspects of the scheme. Among other things, (1) I helped purchase toll-free phone numbers for the fake Canadian and Chinese companies (which gave these companies an air of legitimacy), (2) I worked with a money laundering expert to route the proceeds through a web of foreign bank accounts and through family-owned bakery in Nigeria, (3) I purchased large sets of email addresses from a vendor in Vietnam (which email addresses were used to contact prospective victims), (4) I helped fabricate the fake passports and identification documents of the supposed Canadian representatives, (5) I helped arrange for the shipping of the worthless crates to victims, (6) I worked with a web-design specialist to create and update the websites of the fake Canadian and Chinese companies, (7) I used "spoof" cards, email accounts held under fictitious names, and VPN masking technology to fool victims into thinking they were corresponding with representatives in Canada and China, and (8) I helped develop the "scripts" that co-conspirators would use when speaking with prospective victims on the phone. When completing many of these tasks, I used the email account ripx2003@yahoo.com and petowenn@gmail.com in an attempt to conceal my true identity. I also used several of my Canadian bank accounts, including the account ending in x7590 at Royal Bank of Canada and the account ending in x5918 at CIBC, to received laundered proceeds from the scheme. Finally, I acknowledge, and do not dispute, that the following victims suffered the following losses as a result of their participation in the scheme: (TOTAL: $13,100,833.)

(CR Doc. 156 at 10-12.)

Movant's argument in Subclaim Eight is meritless. Movant fails to demonstrate that the Court departed from the requirements of Rule 11, and his claims in Ground Two fail.

### d. Ground Three

Movant argues the government withheld "material evidence that would have exonerated" him. (Doc. 1 at 8.) He alleges the "U.S. Attorney did not disclose the true owners of email addresses nor the owner of the many bank account used in the alleged crime." (*Id.*) He claims the "owners of these bank account and e-mail addresses can be obtained through discovery." (*Id.*)

Due process is violated when the government suppresses material evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, a petitioner must demonstrate: (1) that the evidence at issue is favorable to

him, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence, either willfully or inadvertently; and (3) that the evidence was material to the defense. *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1999).

Movant's argument is fatally flawed because he admits the "owners of these bank account and e-mail addresses can be obtained through discovery." (Doc. 1 at 8.) But Movant must first demonstrate the government suppressed exculpatory evidence. Movant fails to identify a single document that the government failed to disclose. Movant's motion must "specify all the grounds for relief available to the moving party," and "state the facts supporting each ground." 28 U.S.C. § 2255; Rule 2(b) of the Rules Governing Section 2255 Proceedings; *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). He presents no facts supporting a *Brady* violation and has not met his burden of establishing the existence of any of the three essential components of a violation. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir. 1995) ("To prove a *Brady* violation, a defendant must show that the government withheld material exculpatory evidence.").

In his Reply, Movant argues that the government "admits that the owner of the e-mail was not turned over to petitioner . . . ." (Doc. 11 at 15.) The government did not make that admission. Instead, the government stated it "turned over to the defense all of the underlying email and bank account records that had been gathered through search warrants and MLAT requests." (Doc. 7 at 18.) The government correctly added that it did not have an obligation to produce information it did not possess or of which it was unaware. (*Id.*)

Movant also argues the government's position is inconsistent because the government agrees Movant was "dishonest" during the proffers but then asserts his statements during his plea colloquy were credible. (Doc. 11 at 15-16.) But Movant was under oath when he admitted his guilt and never claimed he was coerced in the seven

months between his guilty plea and sentencing.

### e. Evidentiary Hearing

Movant's allegations arguing Rule 11 violations (Ground Two) and *Brady* violations (Ground Three) are conclusively decided on the record without a hearing. Movant's allegation of coercion in Ground One also does not warrant a hearing. An evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988). *See also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) (collecting cases and agreeing that collateral challenges based only on allegations that directly contradict a petitioner's sworn statements ordinarily fail and do not require a hearing); *Lunsford*, 787 F.2d at 466 (deciding without hearing); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (finding that "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").

Here, Movant offers nothing other than his claim of coercion. But the entire record belies his current assertions. Movant presents no compelling explanation to discredit his sworn plea colloquy. Importantly, his conduct during the seven months prior to sentencing is inconsistent with his current claim. Movant met with government agents in the hope of securing a recommendation of a reduced sentence, and he was present at sentencing when his attorney asked for a lower sentence than he received. In his Motion and Reply, Movant presented the Court with detailed information and an affidavit regarding his claims. Due to the substantial information before the Court, an evidentiary hearing is not warranted. *See United States v. Andrade-Larrios*, 39 F.3d 986, 987-88 (9th Cir. 1994) (finding the "district judge acted within his discretion in denying an evidentiary hearing on the § 2255 motion because the files and records conclusively showed that the movant was not entitled to relief").

Accordingly,

**IT IS RECOMMENDED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right. "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not find Movant's claims debatable, it is recommended a certificate of appealability not issue.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 20th day of January, 2017.

Honorable John Z. Boyle
United States Magistrate Judge